I.       UNITED STATES DISTRICT COURT

II.      EASTERN DISTRICT OF CALIFORNIA

KENT ANDREW BRANDT,

Plaintiff,

v.

FRANK J. BISIGNANO, Commissioner of Social Security[1]

Defendant.

_____ /

Case No.  1:25-cv-00117-KES-SKO

**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED AND THE ACTION BE REMANDED TO THE COMMISSIONER FOR FURTHER PROCEEDINGS**

(Doc. 1)

<u>14-DAY DEADLINE</u>

III.      INTRODUCTION

Plaintiff Kent Andrew Brandt ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be granted and that the action be remanded to the Commissioner for further proceedings.

---

[1] On May 7, 2025, Frank J. Bisignano was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The matter is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Cal. Local Rule 302.

### IV.        BACKGROUND

Plaintiff was born in 1981.  (Administrative Record ("AR") 59, 300).  He earned a high school diploma.  (AR 62).  On July 21, 2020, Plaintiff filed an application for DIB, alleging he became disabled on February 16, 2019.  On August 3, 2021, an Administrative Law Judge ("ALJ") entered an unfavorable decision against Plaintiff finding that Plaintiff was not disabled as of that date.  (AR 81–91).  The Appeals Counsil then found no basis for overturning the ALJ's decision.  (AR 17).

After the initial denial for Plaintiff's alleged onset date of February 16, 2019, Plaintiff subsequently filed another application for DIB and protectively filed a Title XVI application for supplemental security income, alleging he became disabled on August 4, 2021, due to "high excessive compulsion, anxiety, paranoia, delusions, sleeping problems, [and] bipolar."  (AR 279, 297).

### A.        Relevant Evidence of Record[3]

Documentation from a March 2021 reflect that Plaintiff reported: "irritable mood" and that "med[ication was] helping."  (AR 501).

A May 2022 record reflects that Plaintiff was accompanied by his mother to an appointment, and the associated visit note documents that Plaintiff had an "irritable mood," and that his mother stated that Plaintiff "had been having episodes with irritable mood" and "gets angry and moody."  (AR 441).

In a record associated with an October 2022 appointment, Plaintiff was assessed as "irritable and [gets] angry easily" and the documentation includes a note that during a discussion regarding his medication, he "started getting angry and irritated."  (AR 416).

In records from an October 2023 visit, a note reflects that Plaintiff had "become more irritable."  (AR 1065).

In December 2023, Plaintiff's chief complaint was documented as "seeking [addiction] treatment because he said he deals with outbursts of anger on a regular basis."  (AR 1223).

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on December 27, 2022, and again on reconsideration on February 28, 2023.  (AR 98–171).  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 197–201).  The ALJ conducted a hearing on November 16, 2023.  (AR 33–56).

Plaintiff appeared at the hearing with his attorney and testified as to his alleged disabling conditions and work history.  (AR 35–53).  Answering the question, "[s]o why do you feel that you're unable to work?," Plaintiff responded in relevant part:

> I get anxiety and stressed out, and when someone tells me to do something that I don't like, I will probably mouth off, or usually will mouth off, and that's what ends up getting me fired.  And I can't maintain jobs because I get too upset to hold my tongue, I guess, due to agitation and anxiety, and all that sort of thing.

(AR 42–43).  He also testified that, while the medication for his mental health symptoms was helping some, they made his symptoms "like, 30%, 40% better, maybe" and "not even 50%."  (AR 44).  When asked to describe what "30% better" meant, Plaintiff described, in relevant part, how

> [t]he outbursts are less than they used to be, but I still have them; I'd probably say few rimes a month at least, and where it was at least half the time—half the month, I had outbursts every other day before the medicines, so I do think the medicines are helping, but they're also causing other harms, like the tremors and the—memory loss.

(*Id.*).  When asked "[w]hat kinds of things do you have outbursts over," Plaintiff responded that it was "[a] lot with [his] family . . . more with my family than there is with anyone else[, b]ut things trigger [him] when [he's]—you know, I could just, you know, I mean, anything—anything could trigger me."  (*Id.*).  When asked if he can "stop" himself from "flying off the handle" or "los[ing] it," in Plaintiff's words, or "walk away," Plaintiff responded, "I've tried it, but I usually don't.  I mean I've been successful, maybe, one out of 20 times doing that, walking out—walking away, but more than not . . . it gets worse, and it gets worse, and it's really bad."  (AR 45–46).  And when asked how many times he had been fired for his outbursts, Plaintiff stated "I would say . . . four or five times, maybe more."  (AR 46).  Plaintiff also testified in response to a question as to whether he had "any difficulties interacting with people at church or Bible study," that he had "snap[ed]" at

3

a "fellow brother[]" at Bible study, describing it as "literally, just over—argument over some scriptures and—that we didn't agree upon—and it's—it's hard when you do that."  (AR 47).  Plaintiff also testified to his agitation stating, "when people come at me the wrong way or whatever, I get agitated, and I'll cuss them out or whatever," (AR 49), and reiterated that what while his medications help, he "still has [his] outbursts," (AR 52).

A Vocational Expert ("VE") also testified at the hearing.  (AR 53–55).  In relevant part, the VE testified in response to the ALJ's question as to whether an individual who "would have outbursts in . . . talking with other co-workers or supervisors on a regular and ongoing basis, . . .  say weekly, would this individual be able to perform past work or any other work?," with the statement: "based on my experience working as a vocational rehabilitation counselor with people who have control issues—control problems I should say—personal control problems; when this happens on the job, a person is told that this behavior cannot continue, it will lead to termination," and that a person with such "control problems" "would not be able to sustain work unless they could change that behavior." (AR 54–55).

**C.     The ALJ's Decision**

In a decision dated March 8, 2024, the ALJ found that Plaintiff was not disabled.  (AR 17–28).  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 20–27).  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since August 4, 2021.  (AR 20).  At step two, the ALJ found Plaintiff's following impairments to be severe: bipolar disorder and cannabis use disorder in reported remission.  (*Id.*; *see also id.* at 20–21).  The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 21–23).

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay

at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: work at all exertional levels; capable of remembering, understanding, and sustaining concentration, persistence, and pace for simple and detailed but not complex tasks over the course of a normal workday and week. Capable of accepting supervision and tolerate superficial, noncollaborative coworker contact, occasional public contact; and can adapt to routine and predictable work environment.

(AR 23; *see also id* 23–27).  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision."  (AR 23).

The ALJ then determined that Plaintiff could perform his past relevant work as a truck driver, oil field helper, and cleaner (step four).  (AR 27).  In making this determination, the ALJ relied on the VE's answers to a series of hypothetical questions the ALJ posed to the VE during the hearing.  (*Id.*).  The ALJ ultimately concluded Plaintiff was not disabled at any time after August 4, 2021, the alleged onset date.  (AR 27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on November 27, 2024.  (AR 1–3.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

## V.      LEGAL STANDARD

### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

---

evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record

as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## VI.    DISCUSSION

Plaintiff asserts two claims of error: (1) that the ALJ harmfully erred by failing to provide clear and convincing reasons to reject Plaintiff's subjective symptoms and (2) that the RFC is not supported by substantial evidence. (*See* Doc. 16 at 2, *see also id.* 2–17). The Commissioner counters

that the ALJ (1) reasonably discounted Plaintiff's symptom allegations and (2) the RFC is supported by substantial evidence.  (Doc. 6 at 3–9).  The undersigned agrees with Plaintiff that the ALJ harmfully erred in failing to provide clear and convincing reasons to discredit Plaintiff's subjective symptom allegations.[5]

**A.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Id*.  The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom."  *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of the symptoms only if they give "specific, clear and convincing reasons" for the rejection.  *Id*.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties

---

[5] Because further proceedings will necessitate the re-evaluation of Plaintiff's symptom statements as a whole, *see infra*, the Court does not reach the claim of error as to the assessed RFC.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

8

concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.    Analysis**

In evaluating Plaintiff's first claim of error, the undersigned must examine the ALJ's reasoning as to alleged inconsistencies between Plaintiff's subjective complaints and the medical evidence. Upon review of the ALJ's decision, the undersigned observes that the ALJ points to only one piece of objective medical evidence—a mental status examination in November 2023—as standing in contrast to Plaintiff's reported symptoms and limitations. Therefore, the undersigned's analysis will start and end with whether this this conflict constitutes a clear and convincing reason for discounting Plaintiff's reported symptoms.

In general, "conflict[s] between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine[] . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, where an ALJ cites medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Importantly, an ALJ must explain *how* the medical evidence is inconsistent with a plaintiff's reported symptoms and limitations. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015).

9

Here, the Court finds that the ALJ failed to adequately explain how the medical evidence was inconsistent with Plaintiff's reported symptoms and limitations. The part of the ALJ's analysis in which they evaluated Plaintiff's reported symptoms, discounting them in part, begins with a finding that "the claimant's statements concerning the intensity, persistence, and limiting effect of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 23). The ALJ then provided several paragraphs in which they merely restated Plaintiff's testimony and allegations as to his symptoms. (*See* AR 23–24). Those paragraphs are then followed by twelve paragraphs in which the ALJ merely recites medical evidence without any discussion of any specific inconsistencies between the evidence recited and any of Plaintiff's subjective complaints. (*See* AR 24–25). Without restating these paragraphs, the Court observes that this part of the decision simply chronologically catalogues and summarizes the medical evidence in the record, starting with medical records that documented a "noted date" of June 2019 for bipolar disorder and reflected an "active problem" of moderate cannabis use disorder in early remission, (AR 24 (citing AR 1215, 1325[6])), and ending with a November 2023 record (misidentified as a December 2023 record), in which Plaintiff reported being sober, was assessed as having bipolar 1 disorder, and which reflects Plaintiff's "chief complaint in seeking treatment" as "to deal with outbursts of anger," (AR 25 (citing AR 1223)). These paragraphs merely restate the record and do not reflect any analysis comparing that evidence to Plaintiff's reported symptoms.

After this recitation of this medical evidence, the ALJ drew only one direct comparison between the medical evidence and Plaintiff's subjective complaints. (*Id.*). The ALJ observed that "[d]espite claimant's allegations the mental status examination in November 2023 his behavior was normal and cooperative (sic)." (*Id.*). The ALJ then explained how that November 2023 treatment record included various normal findings. This analysis falls short of the requirement that the ALJ provide clear and convincing reasons to reject a Plaintiff's reported symptoms for at least two reasons.

---

[6] The Court observes that these records are from visits in 2023 and while they support the ALJ's assertion that the bipolar disorder entry has a "noted date" of June 2019. (*See* AR 1215). However, the "noted date for the "moderate cannabis use in remission is "2/12/2023." (*See id.*).

First, is it improper for the ALJ "cherry-pick" evidence from the record, *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). And the ALJ did just that in this part of their analysis by ignoring the numerous records that the ALJ had just cited in their summary of the medical evidence that supported Plaintiff's complaints about his outbursts. (*See* AR 24 ("[Plaintiff] agreed the medications were helping but he continued to have a few anger-outburst" (citing AR 501)); *id.* ("[Plaintiff] complained of irritable mood. His mother confirmed episodes of irritable mood and anger." (citing AR 441)); *id.* ("[The doctor] discussed different options of insomnia medications with [Plaintiff] who then started getting angry and irritated." (citing AR 416)); *id.* at 25 ("He was irritable and had outbursts." (citing 897)); *id.* ("He was positive for irritability." (citing AR 1065–66)); *id.* ("The claimant's chief complaint in seeking treatment was to deal with outbursts of anger." (citing 1223))). Instead, the ALJ focused on only a single section of a single treatment record, (AR 1225), a record that itself included the notation that Plaintiff's "chief complaint" was "that he is seeking treatment because he said he deals with outbursts of anger on a regular basis," (AR 1223). In sum, the ALJ's cherry-picked analysis misrepresents the record and does not "have the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Second, in drawing a comparison between Plaintiff's reported symptoms and this single section of a single treatment record, ALJ did not identify any specific alleged symptoms or limitations that the ALJ determined were discredited by the medical evidence or otherwise explain *how* this single section of a single treatment record was *inconsistent* with Plaintiff's alleged symptoms or limitations. Instead, the ALJ simply states "[d]espite [Plaintiff's] allegations" "the mental status examination in November 2023 his behavior was normal." Setting aside the grammatical problems with this singular reason that the ALJ gave as to why he discounted the extent of Plaintiff's reported symptoms, normal findings in the context of a mental status examination— findings like behavior being normal and cooperative, motor activity being normal, affect being in the normal range and appropriate; mood being congruent; speech being normal; thought process being coherent, relevant, and logical; thoughts not demonstrating suicidal or homicidal tendencies; a lack of psychotic or inappropriate thought content; being alert, clear, and oriented to person, place, time, and situation; along with intact memory as to immediate, recent, and remote recall; average

insight, and unimpaired judgment and impulse—do not inherently conflict with Plaintiff's consistent reports (including in that same visit note) that he suffered from regular irritability and outbursts.

Without more, the undersigned finds that the reasoning the ALJ provides does not "have the power to convince," *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022), and that the ALJ's "path" to discrediting the "intensity, persistence and limiting effects of [Plaintiff's] symptoms" cannot be "reasonably discerned," *Molina*, 674 F.3d at 1121; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020).  In light of that finding, the undersigned concludes that the ALJ's discounting of Plaintiff's reported symptoms is not supported by clear and convincing reasons and therefore constitutes legal error.

**C.    Harmlessness Review**

Now that the undersigned has found an error in the ALJ's decision, the undersigned must consider whether such error was harmless.  *Molina*, 674 F.3d at 1115.  Courts look to the record as a whole to determine whether the error alters the outcome of the case.  *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  An error is harmless "where it is inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

The undersigned cannot conclude that the error is harmless.  It is true that the ALJ did include some limitations in the RFC as to Plaintiff's ability to act with others.  (*See* AR 26 ("There are multiple references to irritability, anger issues, delusions, and anxiety in the medical record to support the limitation in interacting with others.").  However, in light of (1) Plaintiff's testimony regarding at least four to five terminations due to his outbursts, (AR 46); (2)  his continued complaints about his outbursts, (*see, e.g.*, AR 44); (3) his testimony that such outbursts are why he cannot work, (AR 42–43), along with (4) the VE's testimony that when considering a person with "control problems" "on the job" who is unable to modify his behavior, such "control problems" "will lead to termination," and (5) that such a person "would not be able to sustain work unless they could change that behavior," (AR 54–55)—it is not clear that had the ALJ credited Plaintiff as to the full extent of his alleged symptoms, the assessed limitation would not have been greater and therefore

preclusive of any completive work.  Therefore, the undersigned cannot find that the error was "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at 1115, and so the undersigned will recommend that this matter be remanded to the Commissioner for further administrative proceedings.

**D.  Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits.  Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled.  *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the undersigned finds that remand for further proceedings is warranted.  *See, e.g., Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further findings evaluating the credibility of [the claimant's] subjective complaints").  On remand, the Commissioner shall reconsider Plaintiff's reported symptoms and limitations.

**VII.     CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff's motion for summary judgment, (Doc. 16), be GRANTED;

2.     This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.     The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff Kent Andrew Brandt and against Defendant Frank J. Bisignano, Commissioner of Social Security, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 26, 2026**                    /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE